IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


GLENN VERSER,                          )
                                       )
          Plaintiff,                   )
                                       )
                                       )
     v.                                )   No. 10 C 409
                                       )
PARTHA GHOSH,                          )
                                       )
                                       )
          Defendant.                   )


MEMORANDUM OPINION AND ORDER

On January 10, 2010, Glenn Verser, an inmate at Stateville Correctional Center ("Stateville"), filed a 42 U.S.C. § 1983 suit pro se against various Stateville staff, including its medical director, alleging *inter alia* that he was denied adequate medical care as guaranteed under the Eighth Amendment. Subsequently, Plaintiff retained counsel and amended his complaint on four occasions. I previously dismissed all parties with the exception of Stateville's former medical director. Now before me is Defendant's motion for summary judgment on all claims asserted in the Fourth Amended Complaint, which I grant for the reasons that follow.

I.

The following facts are undisputed. Plaintiff, an inmate formerly incarcerated at Stateville, has a history of health problems, including gastroenterological issues, hypertension and high blood pressure.

On December 13, 2007, March 14, 2008, and June 25, 2008, Plaintiff sought treatment from the Stateville medical staff for his gastroenterological issues. He was examined and prescribed antacids for his discomfort. Plaintiff reported that the antacids provided no relief for his abdominal pain.

After additional complaints of abdominal pain, Plaintiff saw Defendant for the first time on October 15, 2008. During that visit, Defendant examined Plaintiff and determined that he was suffering from irritable bowel syndrome and prescribed Zantac.

In a follow-up appointment on November 3, 2008, Defendant again examined Plaintiff and prescribed a liquid antacid in addition to the medication that Plaintiff was already receiving. Also that time, Defendant referred Plaintiff to UIC for a gastrointestinal ("GI") consult. On December 17, 2008, Dr. Rana Abraham at UIC examined Plaintiff and recommended that Plaintiff undergo a CT scan to examine his esophagus, stomach, and duodenum. The CT scan, performed on Plaintiff on January 20, 2009, indicated that Plaintiff likely suffered from constipation.

The record further indicates that Plaintiff did not have a history of constipation.

Plaintiff underwent additional tests, including an edoscopy, which was performed on February 19, 2009. Defendant examined Plaintiff again on February 23, 2009, and noted that the edoscopic report indicated that Plaintiff's esophagus and duodenal bulb were "normal." Dr. Abraham at UIC examined Plaintiff for a follow-up appointment again on March 4, 2009, and diagnosed Plaintiff with persistent abdominal pain that was likely "functional." She recommended a colonoscopy and the drug Cyproheptadine for Plaintiff's discomfort. Defendant ordered the colonoscopy for Plaintiff, but opted not to prescribe the Cyproheptadine.

During Plaintiff's colonoscopy at UIC on April 8, 2009, the doctors found and surgically removed a 10 mm polyp. After the procedure, Plaintiff was returned to the Stateville infirmary at 11:00 P.M. for observation. At approximately 9:00 A.M. the following morning, Defendant evaluated Plaintiff and noted that he was not bleeding and that his chart indicated that he has no "signs of acute distress." After the evaluation, Defendant discharged Plaintiff from the infirmary.

Once returned to his cell, Plaintiff subsequently began to experience pain and rectal bleeding. He requested help from the guards, and a Stateville sergeant ordered that Plaintiff be

escorted from his cell to the "bullpen" area where he awaited medical treatment. While in the bullpen area, Plaintiff lost consciousness and was eventually found by a medical technician sitting on the floor in a pool of his own blood. The medical technician took Plaintiff by wheelchair to the Health Care Unit where Stateville staff and physicians were stationed. Upon arrival, Plaintiff's clothes were soaked in blood. Defendant examined Plaintiff and discovered that he was bleeding rectally and determined that the blood loss constituted a serious emergency. Defendant ordered that Plaintiff be taken by ambulance to the emergency room at Provena St. Joseph's Hospital ("Provena"), where he was admitted and remained for 7 days.

On April 17, 2009, Defendant examined Plaintiff and noted that there was no tenderness in Plaintiff's abdomen or any bleeding. He further noted that Plaintiff had a history of rectal bleeding and that the physicians at Provena were unable to find the source of the bleeding, as all of Plaintiff's tests were normal.

Again on April 29, 2009, Defendant saw Plaintiff for a follow-up appointment, wherein Plaintiff renewed his complaints of abdominal pain. Defendant sent Plaintiff back to the GI clinic at UIC on May 27, 2009, where Dr. Abraham recommended the drug Elavil to treat Plaintiff's pain. Defendant approved Elavil for Plaintiff, but the record indicates he was not aware whether

Plaintiff received it.  Defendant has since retired from service at Stateville.

II.

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, as well as any affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Winsley v. Cook County,* 563 F.3d 598, 603 (7th Cir. 2009).  In determining whether a genuine factual dispute exists, I must construe all facts in the light most favorable to plaintiff and all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *id.*, at 247-48 (original emphasis), nor will the existence of "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Plaintiff must come forward with more than a mere scintilla of evidence in his favor to survive Defendant's motion. *Anderson*, 477 U.S. at 251-52.

Under the Eighth Amendment prisoners are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Gomez v. Randle,* 680 F.3d 859, 865 (7th Cir. 2012). To

prove that he was denied adequate medical care, an inmate must put forth sufficient facts to prove that prison staff was deliberately indifferent to an objectively serious medical condition. *Rodriquez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Prison doctors can show deliberate indifference to a known condition through inaction, *Gayton v. McCoy,* 593 F.3d 610, 623-24 (7th Cir. 2010), or by persisting with inappropriate treatment, *Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). Prison physicians might also show deliberate indifference by delaying necessary treatment and thus aggravating the injury or needlessly prolonging an inmate's pain. *Gomez,* 680 F.3d at 865, *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir. 2012). "Prison doctors cannot simply ignore serious medical conditions or an inmate's severe pain." *Gaston v. Ghosh*, No. 12-2211, 2012 WL 6632088, at *3 (7th Cir. Dec.20, 2012).

The parties agree that Plaintiff was suffering from a serious medical condition. The central question is whether Defendant acted with deliberate indifference to that serious medical condition. Thus, Plaintiff is charged with demonstrating that Defendant "acted with the requisite culpable state of mind." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Reed v. McBride,* 178 F.3d 849, 852 (7th Cir. 1999)). In order to prove that Defendant acted with the culpable state of mind,

Plaintiff must show that Defendant had subjective knowledge of a risk to his health, but nevertheless "intentionally disregarded that risk." *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). Negligent action will not suffice; rather "deliberate indifference is simply a synonym for intentional or reckless conduct," which is "so dangerous that the deliberate nature of the defendant's actions can be inferred." *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (quoting *Brownell v. Figel*, 950 F.3d 1285, 1291 (7th Cir. 1991)). Moreover, "[e]ven if a defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm was ultimately not averted.'" *Gayton*, 593 F.3d at 620 (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (7th Cir. 2008)).

Whether a defendant was "deliberately indifferent" to a serious medical condition is a fact question "to be resolved by a jury if a plaintiff provides enough evidence to survive summary judgment." *Gayton,* 593 F.3d at 620. This question may only go to the jury if Plaintiff can demonstrate the following standard:

> [D]eliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure form accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such judgment.

*Id.* at 622-23 (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)).

I must determine whether there is a genuine issue of material fact as to whether Defendant acted with deliberate indifference towards Plaintiff's condition.

Viewing the facts in a light most favorable to the Plaintiff, the record demonstrates the Defendant responded reasonably to each of Plaintiff's complaints. Each complaint was followed by a referral to the specialists at UIC or the emergency room at Provena. While initially the medication prescribed to Plaintiff failed to alleviate his discomfort, Defendant responded by referring Plaintiff to the specialists at UIC and ordering each of the tests that Dr. Abraham recommended. "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Plaintiff nevertheless complains Defendant acted with deliberate indifference at four junctures, including (1) when Defendant allegedly delayed treatment of his abdominal pain in late 2007 and early 2008, (2) when Defendant prescribed ineffective drugs to treat his pain, (3) when Defendant declined to prescribe a drug recommended by Dr. Abraham at UIC, and (4) when Defendant discharged Plaintiff from the infirmary after his colonoscopy. At most, however, Plaintiff's facts are probative not of Defendant's deliberate indifference, but of his

disagreement with Defendant's medical judgment or even medical malpractice.

**Delay In Treatment From December 2007 Through October 2008**

Plaintiff takes issue with the care he received from late 2007 to October 15, 2008, when he first saw Defendant for his abdominal pain. The record indicates, however, that Plaintiff received medical attention and medication in December 2007, March 2008 and July 2008, which undercuts his delay argument. He also made an informal request, in passing from the bullpen, requesting that Defendant examine his abdomen. While delays in treatment, even where not life threatening, may amount to a Constitutional violation, such violation only occurs "provided that the illness or injury for which assistance is sought is sufficiently serious or painful to make the refusal or assistance uncivilized . . . A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains. . . does not by its refusal violate the Constitution." *Cooper v. Casey,* 97 F.3d 914, 916 (7th Cir. 1996) Moreover, Plaintiff faces a heavy burden here, as "[a] series of negligent acts *might* be some evidence of either a plaintiff's exposure to serious risk or an official's awareness of such exposure . . . but showing deliberate indifference through a pattern of neglect entails a heavy burden." *Dunigan v. Winnebago Cnty.*, 165 F.3d 587, 591 (7th Cir. 1999) (emphasis in original) (internal quotations omitted).

I am charged with reviewing the record as a whole and not just isolated events. *Dunigan*, 165 F.3d at 591 (explaining that "a court must examine the entire record, not just isolated events"). Here, the record indicates that Plaintiff was seen by medical staff three times during this so-called period of delay. When Defendant became involved in Plaintiff's treatment, he prescribed medication, ordered that specialists at UIC examine Plaintiff, and approved the tests the UIC doctors recommended to determine the cause of Plaintiff's ailments. Any delay, at best, was merely negligent and did not rise to the level of an Eighth Amendment violation. "[P]ossible evidence of negligence or malpractice does not implicate Constitutional concerns . . . An Eighth Amendment claim requires *much* more." *Dunigan*, 165 F.3d at 592 (emphasis added).

What Plaintiff has not claimed and cannot claim is that Defendant ignored his complaints *and* that he knew that the condition was serious. A delay in treatment only satisfies the Constitutional standard if Defendant knew of the severity of Defendant's abdominal issues *and* refused him treatment. "[D]elay could support a deliberate-indifference claim if [Defendant] was aware of the severity of [Plaintiff's health] problems yet refused to approve [treatment]." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). A shout out from the bullpen was not sufficient to put Defendant on notice that Plaintiff's abdominal

ailment was severe. Thus, Plaintiff cannot demonstrate that Defendant delayed medical treatment with the requisite culpable state of mind.

**Prescription of Antacids For Plaintiff's Abdominal Pain**

Next, Plaintiff contends that Defendant's decision to continue prescribing him antacids, which he claims he repeatedly told Defendant did not alleviate his symptoms, amounts to deliberate disregard of his serious condition. As above, this claim does not fulfill the requirements for a Constitutional violation.

Here, Plaintiff contends he should have been given stronger and more effective medicine at the outset of his treatment. A prisoner, however, is not entitled to receive "unqualified access to healthcare." *Holloway v. Delaware Cnty. Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012) (noting that prisoners are only entitled to "adequate care"). Moreover, "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008)*. For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person

responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain v. Wood,* 512 F.3d 886, 895 (7th Cir. 2008)). In fact, "the prison physician . . . is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway*, 700 F.3d at 1073.

Prescribing antacids at the outset of treatment for abdominal pain is not so unreasonable as to be considered uncivilized given that Plaintiff provided no facts to indicate that Defendant intended to cause him harm. Moreover, when it became clear that the antacids were not sufficient to alleviate Plaintiff's symptoms, Defendant altered the treatment course by referring him to the specialists at UIC and approving each of the tests the specialists recommended. Plaintiff also did not present any evidence that prescribing antacids for his abdominal complaints was outside the accepted professional norm such that it is reasonable to infer that Defendant did not base his decision on medical judgment. Therefore, Defendant's decision to prescribe antacids at the outset of the course of treatment for Plaintiff's abdominal pain does not indicate a deliberate disregard for Plaintiff's serious medical condition.

**Failure To Prescribe Medication Recommended By Specialists**

Plaintiff also contends that Defendant's failure to prescribe the medication recommended by the specialists at UIC is evidence of his deliberate disregard. Specifically, after Plaintiff's March 4, 2009 examination with Dr. Abraham, she prescribed the medication Cyproheptadine for what she diagnosed as Plaintiff's "functional abdominal pain." Defendant, however, opted not to prescribe the Cyproheptadine.

Defendant testified that he did not prescribe the Cyproheptadine because it "is mostly prescribed for allergies and . . . sometimes gets to stimulate appetite. And put somebody to sleep sometimes . . . It's not standard pain medication." (Dep. 111.) He disagreed with Dr. Abraham's recommended medication for Plaintiff and opted not to prescribe it for Plaintiff. As discussed above, "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Holloway,* 700 F.3d at 1073 (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). Plaintiff's claim cannot survive summary judgment because "[t]here is no evidence that [Defendant] intended to cause [Plaintiff] pain" or knew that the Cyproheptadine would cure Plaintiff's pain yet he withheld it anyway. *Id.* Moreover, Plaintiff did not present any evidence that Defendant's refusal

to prescribe the Cyroheptadine was "a substantial departure from accepted professional standards." *Id.*

Plaintiff also argues that Defendant offered conflicting statements about why he did not prescribe the Cyroheptadine. Defendant testified that he did not prescribe it because in his medical judgment "it would not have helped plaintiff." He also testified that when the UIC specialist diagnosed Plaintiff with "functional" abdominal pain, he believed that indicated the condition was "psychosomatic" and not "a GI problem anymore." Those statements are not incompatible with one another. More importantly, both indicate that Defendant made his decision based on his medical knowledge at the time. And, as Plaintiff's primary care doctor, Defendant was "free to make his own, independent medical determination as to the necessity of certain treatments or medications, as long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Id.* There is no indication that Defendant failed to exercise his professional judgment when opting not to prescribe the Cyroheptadine. In fact, Defendant's subsequent actions—approving and ordering additional tests for Plaintiff—indicate that he was exercising his professional judgment, even if Plaintiff disagrees with his choices.

Similarly, Plaintiff argues that on May 27, 2009, in a follow-up appointment with Dr. Abraham, she prescribed the pain

medication Elavil for Plaintiff, but Defendant withheld it from Plaintiff. Defendant testified that he approved of Elavil as a course of treatment for Plaintiff. He also testified that he was responsible for ensuring that Plaintiff received the medication, but could not explain why Plaintiff never received it. While the explanation (or lack thereof) of why Plaintiff failed to receive the medication is troubling, it is evidence of negligence and not deliberate disregard. "Mere medical malpractice . . . is not deliberate indifference." *Edwards*, 478 F.3d at 831. Here, there are no facts to support a contention that Defendant "gratuitously withheld" the Elavil "without a reason." *See id.* (quoting *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (explaining that a deliberate indifference claim can survive dismissal where inmate alleges that medication was gratuitously held without a reason). At most, this breakdown signals medical malpractice and not the requisite state of mind required for a Constitutional violation.

## Early Discharge From The Infirmary After Colonoscopy

Finally, Plaintiff argues that Defendant prematurely discharged him from the infirmary after his colonoscopy. As above, this claim fails because Plaintiff cannot show facts sufficient to demonstrate that Defendant's decision to discharge Plaintiff was motivated by animus as opposed to his professional assessment of Plaintiff's condition. Defendant testified that

the colonoscopy and polypectomy are both "routine" procedures, where patients are typically "observed for a few hours" afterwards and then sent home. While Plaintiff states in his Declaration that he "complained" to the nurse that he "was experiencing even more intense abdominal pain than usual," the nurse's notes on that day belie that statement. The notes say that Plaintiff "offers no complaints," had "zero signs of distress," and that he "only want[ed] to talk to the Doctor." Plaintiff cannot create a genuine issue of fact by manufacturing a dispute through his Declaration. *See Szymanski v. Rite-Way Lawn Maintenance Co., Inc.,* 231 F.3d 360, 364 (7th Cir. 2000) (explaining that a plaintiff's "self-serving affidavits without factual support in the record will not defeat the motion for summary judgment").

Defendant testified that when he examined Plaintiff the morning after the procedure, there were no signs of bleeding, and no reports from Plaintiff that he was experiencing discomfort. Accordingly, Defendant sent Plaintiff back to his cell. As above, there are not sufficient facts to support a contention that Defendant based his decision to release Plaintiff back to his cell on anything other than his professional judgment. He observed that Plaintiff was not bleeding and the notes from Plaintiff's admittance the night before, which indicate that he had no complaints and "zero" signs of acute distress. Faced with

these facts, I cannot say that Defendant's actions were outside of the accepted professional norm or that he took those actions guided by principles other than those of his professional medical judgment. Moreover, the record is clear that once Plaintiff's condition deteriorated unexpectedly, Defendant ordered him to the emergency room and took all the necessary steps to treat Plaintiff's serious medical condition. There is no evidence of deliberate indifference on the part of Defendant that would support Plaintiff's Eighth Amendment claim.

### III.

For the foregoing reasons, Defendant's motion for summary judgment is granted.

Dated: February 13, 2013          **ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge